UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES R. MERCER, JR.,

        Plaintiff,

   -v-                                     9:08-CV-537

T. BENSON, Correctional Officer, Wende C.F.;
T. HUNTER, Correctional Officer, Wende C.F.;
R.N.P. SMITH, Correctional Sergeant, Wende C.F.;
VONDA JOHNSON, Director of Facility Health
Services, Clinton C.F.; BRIAN LECUYER, Nurse
Administrator, Clinton C.F.; S. MILLER, Nurse
Practitioner, Clinton C.F.; and T. BROUSSEAU,
Inmate Grievance Program Supervisor, Clinton C.F.,

        Defendants.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

JAMES R. MERCER, JR.
Plaintiff, Pro Se
87-C-0688
Livingston Correctional Facility
P.O. Box 91
Sonyea, NY 14556

HON. ERIC T. SCHNEIDERMAN           MICHAEL G. MCCARTIN, ESQ.
Attorney General for the State of New York    Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

---

     [1] Each defendant is sued in his or her individual and official capacities. Plaintiff has abandoned all claims against defendants Brian Lecuyer and T. Brousseau, who will therefore be dismissed. See Pl.'s Response to Defs.' Rule 7.1 Statement, Dkt. No. 108-2, ¶¶ 41–45, 49–57; Pl.'s Mem. of Law, Dkt. No. 108-1, 18.

**MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

Plaintiff James R. Mercer, Jr. ("plaintiff" or "Mercer"), a New York state prison inmate proceeding pro se and in forma pauperis, commenced this action on March 6, 2008, pursuant to 42 U.S.C. § 1983 alleging that defendants violated his civil rights. Specifically, plaintiff alleges that the defendant correctional officers Timothy Benson ("Benson"), Timothy Hunter ("Hunter"), and Sgt. Patrick Smith ("Smith") used excessive force against him in violation of the Eighth Amendment. Plaintiff further claims that defendants Sheryl Miller ("Miller"), nurse practitioner, and Dr. Vonda Johnson ("Johnson"), Facility Service Director, were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Plaintiff seeks monetary damages and injunctive relief. Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 103. Plaintiff opposes the motion, and defendants have replied. Dkt. Nos. 108, 112. The motion was considered on submit.

**II. FACTUAL BACKGROUND**

At all times relevant to this action plaintiff was an inmate in the custody of the New York State Department of Correctional Services and was housed at Wende Correctional Facility ("Wende") and Clinton Correctional Facility ("Clinton").

**A. Excessive Force at Wende**

At approximately 6:30p.m. on November 30, 2006, correctional officers at Wende opened Mercer's cell to allow him to attend an event in the facility's gym. What occurred next is in dispute.

Mercer alleges that as he exited the cell block with two other inmates, Benson singled him out, ordered him to stand by a nearby "fire box," and "began a verbal course of aggressive words towards plaintiff" after the other inmates left the area.  Compl., Dkt. No. 1, ¶ 23–25.  Benson then attempted to punch plaintiff in the head while holding keys in his hand.  Benson struck plaintiff with a glancing blow on the left side of his face, near his eyebrow, causing a "gash" that immediately began bleeding.  Id. at ¶ 27.  Hunter then pushed Mercer against a wall and, with Benson, "slammed" him to the floor.  Id. at ¶ 28. Smith then arrived on the scene, twisted plaintiff's right arm behind his back, handcuffed his right wrist, and ordered him to put his left hand behind his back.  However, plaintiff was unable to comply because his left hand was trapped underneath his body as he lay face-down with an officer's knee on his back.  Plaintiff asserts that, as a result of Smith's actions, he suffered injuries to both of his shoulders and ultimately required surgery on his right shoulder.

Defendants maintain that as Mercer was being led out of his cell, he turned and "took a swing" at Benson with a closed right fist.  Defs.' Rule 7.1 Statement, Dkt. No. 103-2, ¶ 8. Benson stepped back and grabbed plaintiff around his waist.  Hunter then grabbed plaintiff around his upper torso, and the two officers "guided" him face-down to the floor.  Id.  Plaintiff resisted defendants efforts to restrain him.  Smith then arrived and handcuffed plaintiff without using excessive force or causing injury.  Defendants assert that any injuries suffered by plaintiff were a result of his resistance, not excessive force.

Immediately after this incident, Mercer was placed in the Special Housing Unit ("SHU") at Wende, where he was evaluated by a nurse.  The medical records indicate that he had a "small cut" on the area around his left eyebrow, which was swollen.  Pl.'s Medical Records,

Dkt. No. 104, 283.  Plaintiff also had "redness" and "slight abrasions" on his back.  Id.

Plaintiff was able to move all of his extremities but complained of pain in his left shoulder,

which was "slightly red."  Id.  Mercer was given an ice pack and bandage for his eye.  Two

weeks later, on December 13, 2006, plaintiff continued to complain of right shoulder pain,

which he claimed was caused by the incident.  Plaintiff's right shoulder was x-rayed on

December 19, 2006, and a "slight elevation of the distal end of the clavicle" was noted.  Id. at

140.  The treating physician recommended further testing to "rule out the possibility of a

grade I acromioclavicular separation."  Id.

As a result of this incident, Benson and Hunter coauthored a misbehavior report

charging plaintiff with Violent Conduct, Creating a Disturbance, and Assault on Staff.  Plaintiff

was found guilty of these charges following a disciplinary hearing and was sentenced to six

months in the SHU.  Mercer filed a formal grievance related to the incident, which triggered

an investigation by the Inspector General's Office.  The investigation found Mercer's

allegations of excessive force to be unsubstantiated.

### B. Inadequate Medical Treatment at Clinton

Mercer was transferred from Wende to Clinton in early January 2007.  While housed

at Clinton, plaintiff received periodic epidural steroid injections and was given Neurontin,

Ultram, Cymbalta, Tylenol, and Ibuprofen for chronic back pain and shoulder pain.  Plaintiff's

first documented contact with Miller was on March 5, 2007, when he complained of

"numbness" and advised her that he needed steroid injections.  Id. at 286.  Plaintiff was

given a steroid injection at Alice Hyde Medical Center ("AHMC") on March 8, 2007.  On

March 13 he claimed that the injection did not relieve his pain as prior injections had.  At that

time plaintiff was advised that a bone scan of his right shoulder had been scheduled.  On

March 23, 2007, plaintiff complained of back spasms and was placed on Robaxin "indefinitely" by Miller pending a pain management evaluation.  Id. at 295.  In April 2007 it was recommended that plaintiff be given Flexeril for his lower back pain.  However, he refused to take this medication.[2]

On May 8, 2007, plaintiff advised Miller that his shoulders and back were causing him great pain but stated, "I ran a couple miles a few days ago and I felt decent."  Id. at 290.  Miller ordered an orthopedic consultation.  During a May 31, 2007, medical examination, plaintiff asked Miller for specific pain medication, a double mattress, extra pillows, and a steroid injection.  Miller denied these requests and advised that such treatment was "not medically necessary" and was "contraindicated."  Id. at 302.  Miller ended this examination due to plaintiff's "unacceptable behavior."  Id.

On June 8, 2007, plaintiff was seen by an orthopedist at AHMC.  An x-ray revealed a "mild degree of separation" in his right shoulder and "erosion" at the end of his left clavicle.[3] Id. at 277.  Miller reviewed the orthopedist's report on June 11, noted that plaintiff had "shoulder impingement," and ordered an MRI on his right shoulder.  Id. at 300, 268.  On June 22, 2007, plaintiff was seen by medical staff at Clinton, complained of back pain, but refused pain medication.

On August 17, 2007, Miller noted that plaintiff suffers from a "chronic" condition, had an MRI on his right shoulder, and would again be seen by an orthopedist.  Id. at 304.  During an August 27, 2007, medical evaluation, plaintiff advised that he had not used his "TENS

---

[2]  Plaintiff claims that he refused this medication because he had "suffered a drug overdose in 2001 and . . . one of the medications he was taking at the time of the overdose [was] Flexeril."  Pl.'s Response to Defs.' Rule 7.1 Statement, ¶ 25.

[3]  The x-ray was requested by Johnson.  Id. at 276.

unit"[4] in six months but claimed that the pain was now severe enough to warrant use.  Id. at

308.  In September 2007 plaintiff again complained of right shoulder pain and was seen by a

doctor at AHMC.  The doctor recommended arthroscopic surgery.  On September 20, 2007,

Miller referred plaintiff for such a procedure to performed as soon as the authorization could

be processed.

In October 2007 plaintiff had a lumbar/spinal MRI at AHMC.  Mercer was admitted to

AHMC on November 2, 2007, for "pain therapy."  Id. at 66, 69.  Plaintiff received epidural

steroid injections during this hospitalization and was discharged on November 5.  Upon

discharge, plaintiff signed a refusal to return for a follow-up visit.  See id. at 178.  The

following day, plaintiff advised medical staff at Clinton that he was in pain and requested

additional pain medication, but he admitted that he was able to play soccer.  On December 7,

2007, Miller requested an orthopedic consultation for plaintiff's left shoulder.  Plaintiff

underwent arthroscopic surgery on his right shoulder at AHMC on December 20, 2007.  On

the same day, Miller requested a physical therapy consultation and scheduled him for

physical therapy three times per week for six weeks, per the surgeon's order.

Mercer sent several letters to Johnson complaining of the medical treatment he was

receiving at Clinton.  On April 5, 2007, Johnson responded to one such letter by advising that

"pain management issues are addressed at the discretion of your medical provider here at

Clinton.  I have shared your letter with Ms. Miller so that she is aware of your concerns."  Id.

at 225.  On June 20, 2007, plaintiff sent a letter to Johnson detailing his medical history and

complaining that he was not receiving adequate medical care.  Johnson replied by letter on

---

[4] A TENS unit is a Transcutaneous Electrical Nerve Stimulation device.

July 6, 2007, noting that plaintiff was receiving appropriate treatment and was scheduled to see Miller and an outside doctor within a month.  See Johnson Decl., Ex. A, Dkt. No. 103-11.

### III.  DISCUSSION

#### A.  Motion for Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986).  A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim.  Id. at 250 n.4, 106 S. Ct. at 2511 n.4.  The failure to meet this burden warrants denial of the motion.  Id.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Id. at 250, 106 S. Ct. at 2511; Fed. R. Civ. P. 56(e).

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record

reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."

Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also

Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when

"there can be but one reasonable conclusion as to the verdict").  Finally, when a party seeks

summary judgment against a pro se litigant, the non-movant must be afforded special

solicitude.  See Sealed Plaintiff v. Sealed Defendant No. 1, 537 F.3d 185, 191 (2d Cir. 2008)

("On occasions too numerous to count, we have reminded district courts that 'when [a]

plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.'" (quoting

McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004))).

### B. **Eleventh Amendment Immunity**

It is well-established that the Eleventh Amendment bars actions against states and

state agencies.  Gollomp v. Spitzer, 568 F.3d 355, 365–66 (2d Cir. 2009).  Eleventh

Amendment immunity precludes a plaintiff from seeking any relief against states and state

agencies—including monetary and injunctive relief.  Cory v. White, 457 U.S. 85, 90–91, 102

S. Ct. 2325, 2329 (1982).  This immunity also bars claims for money damages against state

officials acting in their official capacities.  Kentucky v. Graham, 473 U.S. 159, 167–68, 105 S.

Ct. 3099, 3106 (1985).  However, suits against state officials in their official capacities for

prospective injunctive relief to stop ongoing violations of federal law are permitted.  Ex parte

Young, 209 U.S. 123, 159–60, 28 S. Ct. 441, 453–54 (1908).  Eleventh Amendment

immunity is lost only if Congress unequivocally abrogates states' immunity or a state

expressly consents to suit.  Gollomp, 568 F.3d at 365–66.  It is well-settled that Congress did

not abrogate states' immunity through § 1983.  Quern v. Jordan, 440 U.S. 332, 343–45, 99

S. Ct. 1139, 1146–47 (1979); Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990).

Accordingly, to the extent plaintiff asserts claims for money damages against the defendants in their official capacities, those claims will be dismissed.  However, plaintiff's claims against the defendants in their individual capacities remain.[5]

## C.  Excessive Force

Mercer alleges that Benson, Hunter, and Smith used excessive force in violation of the Eighth Amendment during the November 30, 2006, incident at Wende.

When considering an excessive force claim against prison officials, the main focus is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson v. McMillian, 503 U.S. 1, 6, 112 S. Ct. 995, 998 (1992) (internal quotation marks omitted).  The Eighth Amendment is not violated by "de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Id. at 9–10 (internal quotation marks omitted).  The extent of an inmate's injury, although relevant, is only one of the factors to be considered when determining if an official's use of force was "unnecessary" and wanton.  Whitley v. Albers, 475 U.S. 312, 320–21, 106 S. Ct. 1078, 1085 (1986).  Courts should also take into account the need for force, whether the force was proportionate to that need, the threat perceived by officials, and what was done to limit the amount of force used. Id.

Viewing the facts in a light most favorable to Mercer and drawing all reasonable inferences in his favor, there remains a genuine issue of material fact as to whether Benson,

---

[5]  As explained below, the only claims that will survive this motion are those for excessive force against Benson, Hunter, and Smith.  Because Mercer no longer resides at Wende and the alleged incident was isolated and is not ongoing, plaintiff cannot seek prospective injunctive relief against these defendants.

Hunter, and Smith used excessive force in violation of the Eighth Amendment. Defendant alleges that—without provocation—Benson punched him in the face while holding keys, causing a "gash" near his left eyebrow. Plaintiff further alleges that Benson and Hunter then "slammed" him into a wall, forced him to the ground, and kneeled on his back. Smith then handcuffed plaintiff, allegedly handling his arms in such a manner as to cause injury to both of his shoulders.

In support of their assertion that no genuine issue of material fact remains for trial, defendants merely deny Mercer's version of the story and claim that he initiated the violence. Defendants point to the disciplinary report and hearing, through which plaintiff was found guilty of Violent Conduct, Creating a Disturbance, and Assault on Staff. Defendants also cite the memoranda they filed in response to the use of force. However, these self-serving documents, without more, are insufficient to meet defendants initial burden of demonstrating that there is no genuine issue of material fact. See In re Dana Corp., 574 F.3d 129, 153 (2d Cir. 2009) (weighing the self-serving statements of an interested witness is a task for the fact-finder at trial, not the role of a court on a motion for summary judgment).

Instead, the record supports plaintiff's version of the events. Plaintiff has put forth the sworn declaration of fellow Wende inmate Darnell Dye, who witnessed the beginning of the incident. See Dye Decl., Dkt. No. 108, 16–17. Dye asserts that as he, plaintiff, and one other inmate exited the "six block" cell area, Benson directed plaintiff to stand "off to the side." Id. Dye denies witnessing plaintiff attempt to strike Benson before he (Dye) left the area. Although defendants are correct that this declaration sheds no light on what happened after Dye left the scene, it supports plaintiff's claim that Benson singled him out as he exited

the cell block and counters defendants' assertion that Mercer turned and swung at him as he walked out of his cell.

Moreover, the medical records reveal that plaintiff indeed sustained a "small cut" and swelling near his left eyebrow. This corroborates his claim that Benson struck him in the face while holding a key. Defendants do not offer any other explanation for the cut and swelling near plaintiff's left eye. Two weeks after the incident, plaintiff continued to complain of pain in his right shoulder. A December 19, 2006, x-ray revealed a "slight elevation of the distal end of the clavicle," and further testing was ordered to rule out a "grade I acromioclavicular separation." This supports plaintiff's claim that defendants manipulated his arms with sufficient force to cause injury to his shoulders. Although the medical records show that plaintiff suffered from chronic back pain prior to the incident, there is nothing to suggest he had pre-existing shoulder injuries. It is thus reasonable to infer that plaintiff's subsequent shoulder problems were caused by the November 30, 2006, incident.

While a finder of fact may ultimately reject Mercer's version of the incident, after resolving all ambiguities and drawing all reasonable inferences in the light most favorable to him, the record provides sufficient evidence for a rational person to find in his favor. In light of the parties' differing versions of the facts, a determination as a matter of law inappropriate. See Tafari v. McCarthy, 714 F. Supp. 2d 317, 352 (N.D.N.Y. 2010) ("Where '[t]he circumstances of the incident and assessment of fault [bear] directly on the issue of whether force used was excessive . . . given the conflicting evidence . . . [t]he resolution of that issue must be left to the ultimate trier of fact.'" (quoting Corselli v. Coughlin, 842 F.2d 23, 26–27 (2d Cir. 1988))).

Therefore, there remains a genuine issue of material fact as to whether Benson, Hunter, and Smith used excessive force in violation of the Eighth Amendment. Accordingly, defendants' motion for summary judgment will be denied as to the excessive force cause of action.

### D. Deliberate Indifference to Medical Needs

Mercer alleges that Miller and Johnson were deliberately indifferent to his serious medical needs while he was housed at Clinton in 2007.

Claims that prison officials have disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing Rhodes v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)). Prison officials must "ensure that inmates receive adequate food, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates." Id. (internal quotation marks omitted).

It is well-established that mere disagreement over diagnosis and treatment does not subject the involved prison officials to liability. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). To show that the medical treatment of a prisoner violated the Eighth Amendment, a plaintiff must prove that the defendants' acts or omissions constituted "deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106, 97 S. Ct. at 292. To satisfy this standard, a plaintiff must establish both an objective and subjective element. Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481 (1993).

Under the objective prong, it must be shown that the alleged deprivation of medical treatment was "sufficiently serious"—meaning a condition of urgency that may produce death, degeneration, or extreme pain.  Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (citing Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998)).  This involves two separate inquiries.  Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).  First, it must be asked whether plaintiff was actually deprived of adequate medical care.  Id.  If the prison officials acted reasonably with regard to plaintiff's health risk, they cannot be held liable for an Eighth Amendment violation.  Id.  Second, it must be determined whether the inadequacy in medical care was "sufficiently serious."  Id. at 280.  Where, as here, the alleged inadequacy is in the treatment provided, the seriousness inquiry is narrow and focuses on the delayed or deficient treatment rather than on the prisoner's underlying condition alone.  Id.

Under the subjective prong, the plaintiff must prove that the defendants acted with a "sufficiently culpable state of mind."  Johnson, 412 F.3d at 403 (internal quotation marks omitted).  This requires proof that the defendants knew of and disregarded an excessive risk to the plaintiff's health or safety.  Id.; see Farmer, 511 U.S. at 839–40, 114 S. Ct. at 1980 (noting that this standard is analogous to criminal recklessness).

Plaintiff can establish neither prong of this claim.  The extensive medical records indicate that he was under the care of Miller and Johnson at Clinton beginning in March 2007.  Thereafter, as detailed above, plaintiff underwent a litany of evaluations, orthopedic and pain management consultations, steroid injections, MRIs on his back and shoulders, x-rays, a bone scan, and, ultimately, arthroscopic surgery in December 2007.  Plaintiff received physical therapy after his surgery.  Mercer was also provided with a TENS unit and various pain medications—some of which he refused to take—and received pain therapy at AHMC.

Such medical treatment is objectively reasonable, and any purported inadequacy is not sufficiently serious for purposes of an Eighth Amendment claim. Indeed, plaintiff admitted that he was able to run a few miles and play soccer during this time period. This belies his assertion that the allegedly inadequate treatment he received was serious. Moreover, even assuming the objective prong was met, there is nothing in the record to suggest Miller and Johnson intentionally disregarded an excessive risk to Mercer's health. The medical records show that plaintiff received adequate treatment for all of his complaints. In his deposition, plaintiff acknowledged that after he first advised Miller of his need for steroid injections she referred him to AHMC "right away" and "very quickly." Roberts-Ryba Affirm., Ex. A, Dkt. No. 103-4, 27, 30. Defendants cannot be held liable for a constitutional violation merely because the treatment was not as effective as Mercer would have preferred.

Accordingly, defendants' motion for summary judgment will be granted as to the medical indifference cause of action.

### E.  <u>Qualified Immunity</u>

The remaining defendants—Benson, Hunter, and Smith—assert that they are entitled to qualified immunity with respect to the excessive force claim.

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). It is clearly established that "a prison official's use of force against an inmate for reasons that do not serve a penological purpose violate[s] the inmate's constitutional rights." <u>Tafari</u>, 714 F. Supp. 2d at 353–54 (citing <u>Boddie v. Schnieder</u>, 105 F.3d 857, 861–62 (2d Cir. 1997) and <u>United States v. Walsh</u>, 194 F.3d 37, 48–50 (2d Cir.

1999)).  However, even if the constitutional privileges are clearly established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir.1991).  This objectively reasonable part of the analysis is met if "officers of reasonable competence could disagree" on the legality of the defendant's conduct.  Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986).

As explained above, there is a genuine issue of material fact as to whether Benson, Hunter, and Smith violated plaintiff's Eighth Amendment right to be free from excessive force. The defendants' entitlement to qualified immunity therefore turns on whether it was objectively reasonable for them to believe that their actions did not violate that clearly established right.  Defendants maintain that it was reasonable to subdue plaintiff after he attempted to assault Benson.  However, the facts must be viewed in the light most favorable to Mercer for purposes of this motion for summary judgment.  There is sufficient evidence in the record to support plaintiff's claim that Benson singled him out as he exited the cell block and struck him in the face while holding a key—all without provocation and for no reason other than to cause Mercer harm.  The record also supports plaintiff's claim that Hunter and Smith participated in the excessive force by forcing him to the floor and handcuffing him, causing further injury to his back and shoulders.

Therefore, a reasonable juror could conclude that defendants Benson, Hunter, and Smith knew or should have known that their conduct violated Mercer's Eighth Amendment rights.  Accordingly, these defendants are not entitled to qualified immunity.

IV. **CONCLUSION**

Defendants are entitled to Eleventh Amendment immunity to the extent that they are being sued for money damages in their official capacities.  Further, defendants Miller and Johnson were not deliberately indifferent to Mercer's medical needs.  However, there remains a genuine issue of material fact as to whether defendants Benson, Hunter, and Smith used excessive force against Mercer on November 30, 2006, in violation of the Eighth Amendment.  Because these three defendants are not entitled to qualified immunity, this claim remains for trial.

As a result of the above, it is

ORDERED, that

1.  Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

2.  Defendants Brian Lecuyer and T. Brousseau are DISMISSED;

3.  All claims for money damages against all defendants in their official capacities are DISMISSED;

4.  The deliberate indifference to medical needs claim against defendants Sheryl Miller and Dr. Vonda Johnson are DISMISSED; and

5.  The excessive force claim against defendants Timothy Benson, Timothy Hunter, and Sgt. Patrick Smith in their individual capacities are NOT DISMISSED and remain for trial.

IT IS SO ORDERED.


Dated: July 29, 2011
       Utica, New York.                        _____
                                               United States District Judge